IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**SALLY GENNETT POPE**                                                                                            **PLAINTIFF**

**v.**                                                                               **CIVIL ACTION NO. 2:21-cv-55-TBM-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                             **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Sally Gennett Pope brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be affirmed and that this action be dismissed.

## PROCEDURAL HISTORY

On August 21, 2017, Plaintiff applied for disability insurance benefits, alleging that she had been disabled since June 24, 2016 due to peripheral vascular disease and irritable bowel syndrome. (Administrative Record [10] at 150-51).[1] After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") held a hearing, and on May 29, 2019, issued a decision finding that Plaintiff was not disabled ([10] at 15-25).

Plaintiff appealed the ALJ's decision to the Appeals Council. On February 14, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([10] at 6-8). On March 26, 2020, Plaintiff filed this action in the

---

[1] Plaintiff previously applied for disability insurance benefits on December 9, 2013, but an Administrative Law Judge issued a decision finding that Plaintiff was not disabled through June 23, 2016. ([10] at 125-34). Plaintiff now alleges that her disability began on June 24, 2016.

1

United States District Court for the Northern District of Mississippi seeking judicial review under 42 U.S.C. § 405(g). On April 9, 2021, that Court transferred the case to this Court. (Order [25]). Prior to the transfer of the case, Plaintiff filed a Memorandum [21] in support of her appeal, and Defendant filed a Memorandum [22] in support of the Commissioner's final decision. Accordingly, this matter is ripe for review by this Court.

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her May 29, 2019, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[2] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date (June 24, 2016) and her date last insured (December 31, 2016).[3] At step two, the ALJ found that Plaintiff had the following severe impairments: peripheral vascular

---

[2] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).
*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[3] A claimant is eligible for disability insurance benefits only if the onset of the qualifying medical impairment began on or before the date last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). Plaintiff's date last insured is December 31, 2016, and Plaintiff bears the burden of establishing that she suffered from a disabling impairment on or before that date. *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981).

disease effecting her lower extremities and obesity. The ALJ found that Plaintiff's other medically determinable impairments—IBS and urinary incontinence—were not severe. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([10] at 17-18).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 CFR 404.1567(a)[5] except she could never climb ladders, ropes, or scaffolds and she could occasionally climb ramps or stairs and crawl" and "needed to elevate her legs during normal work breaks and during lunch breaks." ([10] at 19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([10] at 23). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([10] at 23-24). Accordingly, the ALJ found that Plaintiff was not disabled ([10] at 24-25).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is

---

[4] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a)

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

**ANALYSIS**

Plaintiff raises four grounds for relief:

(1) The ALJ erred in her evaluation of the medical opinions of Drs. Hubbs and Raju.

(2) The ALJ erred in failing to grant a medical expert after being requested to do so by Ms. Pope's attorney.

(3) The ALJ erred by finding that irritable bowel syndrome and urinary incontinence were not severe impairments.

(4) The ALJ played doctor in assessing Ms. Pope's RFC.

**Issue 1: Medical Opinions**

Plaintiff argues that the ALJ failed to properly consider the opinions of Dr. Seshadri Raju and Dr. Davis Hubbs. In 2017, the Social Security Administration revised its regulations regarding the evaluation of medical evidence. These revised regulations are applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520b. Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised regulations.

Under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[6] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors, but need not explain how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

Dr. Hubbs provided a letter dated January 14, 2019, noting Plaintiff's vascular disease and stating that Plaintiff is "unable to sit for a long period of time or stand for a long period of time," is "unable to lift or pull anything over ten (10) pounds," and is "fully disabled and unable to work due to the condition listed above." ([10] at 490). Additionally, Dr. Raju provided a letter dated January 23, 2019, noting Plaintiff's peripheral vascular disease and stating that she should not lift more than ten pounds, should "predominantly sit with elevation of legs and occasional

---

[6] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

standing/walking," should not stand more than ten minutes without rest or sit more than six minutes without elevating her legs, and should not walk more than ten minutes without rest. ([10] at 493).

The ALJ considered these opinions and explained:

> [T]he undersigned finds that the opinions of Dr. Raju and Dr. Hubbs from January 2019 are unpersuasive. These opinions are remote in time from period from the alleged onset date through the date last insured, they do not reflect the claimant's functioning within the relevant period, and the limitations they describe in January 2019, over two years after the relevant period, are not relevant to assessing the claimant's functioning within the relevant period.
>
> In summary, while the claimant was limited by her peripheral vascular disease and obesity through the date last insured, these limitations were not disabling through the date last insured, and the above residual functional capacity assessment is supported by the weight of the medical and opinion evidence established in the record.

([10] at 23) (internal citations omitted).

Evidence showing the degeneration of a condition after the date last insured is not relevant. *See Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995). Plaintiff, however, argues that the ALJ failed to consider all of the medical records from Dr. Hubbs and Dr. Raju, including those created before, during, and after the relevant time-period. According to Plaintiff, if the ALJ had considered all of the evidence, she would have reached a different conclusion.

Plaintiff points to Dr. Hubbs's progress note from June 2, 2016—just prior to Plaintiff's alleged onset date—noting Plaintiff's urinary incontinence and bowel issues and stating that he agrees that she is disabled due to her legs and bladder issues. ([10] at 6, 458). Plaintiff also points to Dr. Hubbs's notes from July 28, 2016, stating that Plaintiff was experiencing problems with her bladder and sometime lacked full control of her bowels. ([10] at 7, 456-57).

Concerning Dr. Raju, Plaintiff cites a letter dated May 18, 2016, stating that patients with peripheral vascular disease are discouraged from "prolonged standing or sitting for more than 1

hour at a time." ([10] at 8, 320).  Plaintiff also cites a note from October 30, 2017—ten months after the date last insured—stating that Plaintiff "is unable to work and considered temporarily disabled until treatment is finalized and [maximum medical improvement] has been reached." ([10] at 8, 404).  Additionally, Plaintiff points to notes from multiple office visits in which swelling of ankles and lower extremities and lack of bladder control are listed among Plaintiff's complaints. ([10] at 8-10, 407-32).

      The ALJ expressly considered Dr. Hubbs's progress notes from 2016, stating:

> The undersigned considered the June and July 2016 statements for David Hubbs, M.D. that the claimant has bowel and bladder issues and would go on her clothes if unable to get to a bathroom immediately.  These statements are unsupported by treatment for bowel or bladder incontinence with a specialist during the period for the alleged onset date through the date last insured.  These statements are also inconsistent with treatment records from Bryan Calcote, M.D., the claimant's internal medicine physician, in May 24, 2016 indicating that the claimant was taking Lomotil and hyoscyamine and had 'no problems with bowel movements' despite her past medical history of IBS.

([10] at 18, 475).

      The ALJ also considered Dr. Raju's opinions.  The ALJ stated that the May 18, 2016, letter "is of limited persuasiveness as it preceded the relevant period for the alleged onset date of June 24, 2016 through the date last insured, and it is not entirely consistent with the claimant's medical records within the relevant period." ([10] at 22).  The ALJ noted that Plaintiff underwent surgery for a stent placement, and according to the ALJ, the medical records demonstrated that Plaintiff's condition improved during the relevant period—June 24, 2016, through December 31, 2016.  The ALJ noted that multiple medical records indicated that Plaintiff was able to exercise and that her pain and swelling improved after her 2015 stent placement. ([10] at 21-22, 412, 421-22).  The ALJ pointed to a treatment note from Dr. Raju's office noting that Plaintiff's swelling had improved to "Grade 0—none." ([10] at 22, 402-03).  The ALJ also pointed to multiple

records indicating that no limitations were placed on Plaintiff's activity. ([10] at 22, 397-98, 402-03).

The ALJ provided an explanation of her evaluation of the factors of supportability and consistency and, thus, the persuasiveness of the opinions of Dr. Hubbs and Dr. Raju. The ALJ's evaluation of these opinions is supported by substantial evidence and comports with applicable law.

**Issue 2: Medical Expert**

Following the March 20, 2019, hearing before the ALJ, Plaintiff requested a medical expert opinion regarding "medical equivalency," which would be an opinion on whether Plaintiff's impairments medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. On May 29, 2019, the ALJ issued her decision without granting Plaintiff's request and, at step three of the sequential analysis, determined that Plaintiff's impairments did not meet or medically equal a listing. Plaintiff argues that the ALJ erred by denying her request for an updated medical opinion.

An ALJ may ask a medical expert to testify about whether an individual's impairments meet or medically equal a listing. However, an ALJ's decision whether to obtain an updated medical expert opinion is discretionary. *See* SSR 17-2p; *Dominguez v. Astrue*, 286 Fed. App'x 182, 186 (5th Cir. 2008). Such testimony is not required where the record is sufficiently developed. *White v. Soc. Sec. Admin.*, 129 Fed. App'x. 905, 906 (5th Cir. 2005).

The ALJ considered the opinions of two state agency medical consultants, Dr. Madena Gibson and Dr. Glenn James. Both Dr. Gibson and Dr. James determined that Plaintiff had no severe impairments prior to her date last insured. ([10] at 153-54, 159). During the initial review of Plaintiff's claim, it was noted that Plaintiff "was doing much better since surgery and had

decreased pain and swelling in lower extremities." ([10] at 153). On reconsideration, Plaintiff claimed that her symptoms had worsened, but it was determined that the alleged worsening occurred outside the relevant time-period. ([10] at 159). The ALJ did not accept the agency determination that Plaintiff had no severe impairments, finding that such was "not entirely consistent with the bilateral venous duplex scan performed within the relevant period reflecting some degree of bilateral venous reflux in a cluster of varicose veins . . . ." ([10] at 22). The ALJ considered Plaintiff's medical records and subjective complaints concerning her peripheral vascular disease and determined that it was indeed severe, but ultimately found that it was not disabling.

The ALJ did not commit reversable error by declining to obtain an updated medical opinion. The record contains objective medical evidence sufficient for the ALJ to make a proper determination at step three. *See Watson v. Colvin*, 2016 WL 7840709, at *7-8 (M.D. La. Dec. 22, 2016) (finding that an ALJ's refusal to obtain additional medical expert testimony was not error because "the record contained objective medical evidence sufficient for the ALJ to make a proper determination of whether Plaintiff was disabled, including a determination of whether Plaintiff's impairment satisfied a listing.").

Moreover, Plaintiff has failed to show that she was prejudiced by the ALJ's decision not to obtain an updated medical opinion. Courts should not reverse the decision of an ALJ for failure to develop the record unless the claimant shows that he was prejudiced by such failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Id*. (internal quotations and citation omitted). The listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Plaintiff has not demonstrated

9

that an updated medical opinion would alter the ALJ's listing equivalence determination. *See Millican v. Saul*, 2020 WL 821443, at *3 (S.D. Tex. Feb. 19, 2020).

**Issue 3: Severe Impairments**

Plaintiff argues that the ALJ erred by failing to find that her irritable bowel syndrome ("IBS") and urinary incontinence were severe impairments. As previously mentioned, at step two of the sequential analysis, an ALJ determines whether the claimant has a severe impairment. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Plaintiff bears the burden of proving that she suffers from a severe impairment. *See Giles v. Astrue*, 433 Fed. App'x 241, 246 (5th Cir. 2011).

The ALJ determined that Plaintiff's IBS and urinary incontinence were not severe. As previously discussed, the ALJ considered Dr. Hubbs's statements from June and July of 2016 that Plaintiff had bowel and bladder issues and would "go on clothes if unable to get to bathroom immediately." ([10] at 18, 458). The ALJ noted Plaintiff's lack of treatment with a specialist and determined that Dr. Hubbs's statements were inconsistent with treatment records from Plaintiff's internal medicine physician, who noted on May 24, 2016, that Plaintiff had "[n]o problems with bowel movements." ([10] at 18, 475).

The ALJ also considered the opinions of Dr. Gibson and Dr. James, who determined that Plaintiff had no severe impairments prior to her date last insured. ([10] at 22,153-54, 159). The record reveals treatment records from June of 2016 through January of 2017 documenting that

10

Plaintiff had no complaints concerning gastrointestinal issues. ([10] at 410-23). Plaintiff points to other records in which lack of bladder control is listed among Plaintiff's complaints, but on May 12, 2016, and on August 16, 2017, Plaintiff specifically denied that she had incontinence issues. ([10] at 453, 461). Additionally, on June 28, 2016, and November 28, 2016, Plaintiff's physician noted that Plaintiff had no genitourinary symptoms. ([10] at 472, 474).

Plaintiff bears the burden of proving that she suffers from a severe impairment. *See Giles v. Astrue*, 433 Fed. App'x 241, 246 (5th Cir. 2011). Plaintiff has not met this burden. Plaintiff has failed to come forward with evidence demonstrating that her physical ability to do basic work activities was significantly limited by her IBS and urinary incontinence. The record does not establish that Plaintiff suffered from significant functional limitations resulting from her IBS and urinary incontinence.

Plaintiff also argues that, even if her IBS and urinary incontinence are not severe impairments, the ALJ failed to consider these impairments in her RFC determination. The ALJ, however, specifically stated that in making her RFC determination, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." ([10] at 19). The ALJ also stated that she considered all of Plaintiff's "medically determinable impairments." ([10] at 21). Additionally, Plaintiff has failed to establish any additional work-related limitations resulting from her IBS and urinary incontinence that the ALJ should have considered. *See Heck v. Colvin*, 674 Fed. App'x 411, 414 (5th Cir. 2017).

**Issue 4: Playing Doctor**

The ALJ determined that Plaintiff had the RFC to perform sedentary work "except she could never climb ladders, ropes, or scaffolds and she could occasionally climb ramps or stairs and crawl" and "needed to elevate her legs during normal work breaks and during lunch breaks." ([10] at 19). In her fourth ground for relief, Plaintiff takes issue with the ALJ's determination that Plaintiff "needed to elevate her legs during normal work breaks and during lunch breaks." Plaintiff argues that no physician assigned this specific limitation and that the ALJ simply substituted her own lay opinion for that of the medical professionals. According to Plaintiff, the ALJ was "playing doctor."

Plaintiff complains that the ALJ "accepted the opinions of Drs. Hubbs and Raju that she believed were based upon their objective medical findings, and the ALJ rejected the part that she decided were not based upon their objective medical findings." [21] at 24. The law, however, is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

The ALJ considered Plaintiff's subjective complains concerning the need to elevate her legs hourly. ([10] at 19). The ALJ also considered letters from May 18, 2016, and January 23, 2019, stating that patients with peripheral vascular disease are discouraged from "prolonged standing or sitting" and that Plaintiff should "predominantly sit with elevation of legs and occasional standing/walking." ([10] at 320, 493). The ALJ noted that the January 23, 2019, letter was drafted more than two years after the date last insured. ([10] at 23). Additionally, the ALJ found that the May 18, 2016, letter had limited persuasiveness as it was not consistent with the medical records. ([10] at 22).

The ALJ noted that Plaintiff's condition improved during the relevant period. The ALJ noted that Plaintiff was able to exercise, that she was able to homeschool six children, and that her pain improved. ([10] at 21-22, 397, 412, 421-22). The ALJ pointed out that Plaintiff's swelling eventually improved to "Grade 0—none." ([10] at 22, 402-03). The ALJ also pointed out that no limitations were placed on Plaintiff's activity. ([10] at 22, 397-98, 402-03).

"What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The ALJ gave sufficient reasons for her findings, and substantial evidence supports the ALJ's RFC assessment.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual

findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 15th day of October, 2021.

s/ Michael T. Parker<br>
United States Magistrate Judge